## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FRIENDS OF ANIMALS | ) | |
| 777 Post Road, Suite 205 | ) | Civ. No._____ |
| Darien, CT 06820; | ) | |
| | ) | |
|       Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. Bureau of Land Management, | ) | |
| an agency of the United States | ) | |
| 1849 C Street, N.W., Rm. 5665 | ) | |
| Washington, DC 20240 | ) | |
| | ) | |
|       Defendant. | ) | |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

### INTRODUCTION

1.   This action is brought to remedy violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et. seq*. Specifically, it challenges the failure of the Defendant, United States Bureau of Land Management ("BLM") to make a determination and provide responsive documents within the time required by FOIA in regard to two separate FOIA requests. Defendant failed to: (1) make any determination or respond to Friends of Animals' ("FoA") September 10, 2014 FOIA (hereinafter "Request 1" and attached as Exhibit A); and (2) make any determination or release any documents in response to FoA's November 25, 2014 FOIA (hereinafter "Request 2" and attached as Exhibit B).

2.   Request 1 seeks records since 2004 pertaining to the BLM's Wild Horse Adoption Program, including information pertaining to the following adoption facilities: Florence, AZ; Litchfield, CA; Canon City, CO; Hutchinson, KS; Elm Creek, NE; Carson City, NV; Burns, OR; Mantles Ranch, WY; Ridgecrest, CA; Boise, ID; Piney Woods, MS; Palomino

Valley, NV; Pauls Valley, OK; Delta, UT; Rock Springs, WY; Riverton, WY; and all internet adoptions.

3.    Request 2 seeks all records pertaining to the effects of ZonaStat-H, or any other contraceptive containing porcine zona pellucida ("PZP"), administered to wild horses and burros; including any records relating illness or death that is either directly or indirectly related to PZP, and the PZP-22 studies being done in Sand Wash Basin and Cedar Mountains.

4.    As of the date on this Complaint, the BLM has not provided any information in response to FoA's Requests 1 or 2.

5.    Defendant is unlawfully withholding public disclosure of information that FoA is entitled to receive under FOIA. Defendant failed to comply with the statutory mandates and deadlines imposed by FOIA by failing to provide a final determination resolving these requests within the time required by law. Accordingly, Plaintiff seeks declaratory relief establishing that Defendant has violated FOIA. Plaintiff also seeks injunctive relief directing Defendant to promptly provide FoA with the requested material free of cost.

## JURISDICTION AND VENUE

6.    The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) (Freedom of Information Act) and 28 U.S.C. § 1331 (federal question). This Court may grant the declaratory relief under 28 U.S.C. §§ 2201, *et seq.* (Declaratory Judgment Act) and injunctive relief under 5 U.S.C. § 552(a)(4)(B) (Freedom of Information Act). An actual, justiciable controversy exists within the meaning of the Declaratory Judgment Act between FoA and Defendant, the BLM. The Court has jurisdiction, upon receipt of a complaint, "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

7.    Venue is proper in this Court pursuant to 5 U.S.C. § 552(a)(4)(B), which provides venue for FOIA cases in this district.

**PARTIES**

8.   Friends of Animals is a non-profit international advocacy organization with nearly 200,000 members, incorporated in the state of New York since 1957. FoA seeks to free animals from cruelty and exploitation around the world, and to promote a respectful view of non-human, free-living and domestic animals. FoA engages in a variety of advocacy programs in support of these goals. FoA informs its members about animal advocacy issues as well as the organization's progress in addressing these issues through its magazine called ActionLine, its website, and other reports. FoA has published articles and information advocating for the protection of species so that they can live unfettered in their natural habitats. As part of its mission to inform its members about issues affecting animals, FoA has submitted several FOIA requests in the past, and FoA plans to continue submitting FOIA requests in the future.

9.   FoA has been actively advocating for the protection of the Wild Horses that are subject of Requests 1 and 2. FoA is a leading organization advocating for the preservation of wild horses on public lands. On June 10, 2014, FoA filed a petition to list wild horses on federal public lands as a threatened or endangered species under the Endangered Species Act. FoA has intervened in United State District Court of Wyoming regarding the round-up and removal of wild horses in Wyoming.[1] FoA has also published articles on wild horses. Members of FoA regularly visit herd management areas to view, appreciate, study, and photograph wild horses.

10. Defendant, the United States Bureau of Land Management, is an agency within the meaning of 5 U.S.C. § 552(f). Defendant has possession and control of the requested records and is responsible for fulfilling FoA's Requests 1 and 2.

---

[1] *State of Wyoming v. U.S. Dept. of Interior*, No. 2:14-cv-248 (ABJ) (D. Wyo., Jan. 5, 2015).

## LEGAL FRAMEWORK

### A. Freedom of Information Act.

11. Congress enacted FOIA to ensure public access to U.S. government records. FOIA carries a presumption of disclosure. The burden is on the government—not the public—to substantiate why information may not be released. Upon written request, agencies of the United States government are required to disclose those records, unless they can be lawfully withheld from disclosure under one of nine specific exemptions in FOIA.

12. FOIA requires agencies to "determine within 20 days . . . after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefore, and of the right of such person to appeal to the head of the agency any adverse determination." 5 U.S.C. § 552(a)(6)(A).

13. Upon determination by an agency to comply with the request, the records shall be made "promptly available." *Id.* at § 552(a)(6)(C).

14. In "unusual circumstances" an agency may extend the time limits for up to ten working days by providing written notice to the requester setting forth the unusual circumstance and the date on which the determination is expected to be dispatched. *Id.* at § 552(a)(6)(B).

15. With respect to a request for which a written notice purports to apply the "unusual circumstances," the agency must: (1) notify the requester if the request cannot be processed within the time limit; (2) provide the requester with an opportunity to limit the scope of the request so that it may be processed within that time limit or provide an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request; and (3) make available its FOIA Public Liaison to assist in the resolution of any disputes between the requester and the agency. *Id.* at 5 U.S.C. § 552(a)(6)(B)(ii).

16.     As a general matter, a FOIA requester must exhaust administrative appeal remedies before seeking judicial redress. However, if an agency does not adhere to certain statutory timelines (twenty workdays or thirty workdays in "unusual circumstances"), then by statute the requester is deemed to have fulfilled the exhaustion requirement. *See id.* at § 552(a)(6)(C)(i).

**B.  Fee Waiver Requests**

17.     In general, a FOIA requester must pay reasonable costs for the search, review, and duplication of the records sought. *Id.* at § 552(a)(4)(A)(ii)(I)). However, an agency must waive or reduce fees for furnishing documents if: (1) "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government" and (2) "is not primarily in the commercial interest of the requester." *Id.* at § 552(a)(4)(A)(iii).

18.     In reviewing an agency's determination on a fee waiver issue, a district court must apply a *de novo* standard of review and look only to the administrative record that was before the agency at the time of its decision. 5 U.S.C. § 552(a)(4)(A)(vii)

19.     FOIA's fee waiver provision "is to be liberally construed in favor of waivers for noncommercial requesters." 132 Cong. Rec. 27, 90 (1986).

20.     According to the Department of Interior's regulations, if an agency denies your request for a fee waiver, it will notify you, in writing, of the following:

1) The reasons for the denial;
2) The name and title or position of each person responsible for the denial of the request;
3) The requester's right to appeal such denial and the title and address of the official to whom such appeal is to be addressed; and
4) The requirement that such appeal be made within 30 days of the date of the denial.

43 C.F.R. § 2.19(c).

21.     If the agency fails to respond to a waiver request within twenty days, the requester is deemed to have constructively exhausted administrative remedies and may seek judicial review.

22.     Additionally, if the agency fails to comply with the statutory time limit it cannot assess search fees. 5 U.S.C. § 552(a)(4)(A)(viii).

## FACTUAL BACKGROUND: REQUEST 1

23. FoA submitted Request 1 on September 10, 2014 to the BLM.

24. FoA has not received any acknowledgement of the FOIA from a BLM employee.

25. The twenty-day workday time limit for responding to Request 1 passed on October 8, 2014.

26. The BLM did not respond by October 8, 2014 and to this date has still not produced any information responsive to Request 1.

27. The BLM has not made a determination on FoA's fee waiver request with respect to Request 1 in this case.

28. The BLM is unlawfully withholding public disclosure of information sought by FoA, information to which it is entitled to receive, and for which the BLM has not provided a valid disclosure exemption.

29. The BLM has offered no reasonable explanation for its delay, and it has been unwilling to estimate when it will finally be able to comply with its obligations under the FOIA.

## FACTUAL BACKGROUND: REQUEST 2

30. FoA submitted Request 2 on November 25, 2014 to the BLM.

31. On January 30, 2015, BLM sent a letter to FoA acknowledging that it received Request 2 on November 25, 2014 (attached as Exhibit C).

32. The twenty-day workday time limit for responding to Request 2 passed on December 29, 2014.

33. The BLM did not respond by December 29, 2014 and to this date has still not produced any information responsive to Request 2.

34. The BLM is unlawfully withholding public disclosure of information sought by FoA, information to which it is entitled to receive, and for which the BLM has not provided a valid disclosure exemption.

35. The BLM has offered no reasonable explanation for its delay.

## CAUSE OF ACTION

### (Violation of Freedom of Information Act)

36.     FoA herein incorporates all allegations contained in the proceeding paragraphs.

37.     Plaintiff properly requested records within the BLM's control with regard to Requests 1 and 2.

38.     The BLM has failed to produce records to Plaintiff in a full and timely response to the FOIA requests, has failed to make any claims of statutory exemption with regard to the requested documents, and has failed to make a timely determination on FoA's request for a fee waiver.

39.     Accordingly, Plaintiff is entitled to injunctive and declaratory relief with respect to the release and disclosure of the records requested in Requests 1 and 2.

## PRAYER FOR RELIEF

FoA respectfully requests that the Court enter judgment providing the following relief:

1.   Declare that the Defendant violated the Freedom of Information Act by failing to lawfully satisfy, in full, FoA's Requests 1 and 2;

2.   Order the Defendant to process and release immediately all records responsive to Requests 1 and 2 at no cost to Plaintiff;

3.   Retain jurisdiction of this action to ensure the processing of Requests 1 and 2 and ensure that no agency records are wrongfully withheld;

4.   Award Plaintiff costs, including reasonable attorney fees and litigation costs in this action, pursuant to FOIA, 5 U.S.C. § 552(a)(4)(E); and

5.   Grant Plaintiff any other relief that the Court deems just and proper.

Dated: February 18, 2015                           Respectfully Submitted,


/s/ Michael Harris
Michael Ray Harris (DC Bar # CO0049)
Director, Wildlife Law Program
Friends of Animals
7500 E. Arapahoe Road, Suite 385
Centennial, CO 80112
720-949-7791
michaelharris@friendsofanimals.org

**Exhibit A**

| From: | Jennifer Barnes |
|---|---|
| To: | "rwitt@blm.gov"; "BLM_WO_FOIA@blm.gov" |
| Subject: | Freedom of Information Act Request |
| Date: | Wednesday, September 10, 2014 3:19:00 PM |
| Attachments: | FOIA_Wild_Horse_Adoptions.pdf |
| | image001.png |

Dear Mr. Witt,

Please see the attached request for information pursuant to the Freedom of Information Act.

Sincerely,

Jennifer Barnes
Staff Attorney
Wildlife Law Program



Western Region Office
7500 E. Arapahoe Rd., Ste. 385
Centennial, CO 80112

T 720 949 7791
F 888 236 3303
jenniferbarnes@friendsofanimals.org
www.friendsofanimals.org



September 10, 2014

VIA ELECTRONIC MAIL (rwitt@blm.gov; BLM_WO_FOIA@blm.gov)

Ryan Witt
BLM FOIA Officer
1849 C. Street NW, Rm 2134LM
Washington, DC 20240

Re: Freedom of Information Act Request

Dear Mr. Witt,

This is a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for the release and production of records. Friends of Animals ("FoA") request copies of all documents[1] held by the U.S. Department of Interior, including the Bureau of Land Management ("BLM") from 2004 to the date this request is fulfilled pertaining to the Government's Wild Horse Adoption Program, including:

1.  Information pertaining to the adoption facility in Florence, AZ, including:
    a.  how many wild horses have been adopted at this facility;
    b.  applications for the adoption of wild horses and final decisions on each application at this facility;
    c.  the date of adoptions and amount of horses adopted by each adopter at this facility; and
    d.  how many wild horses have been returned by adopters from this facility.

---

[1] "Document(s)" is used in the broadest sense contemplated by Federal Rule of Civil Procedure 34. It means all written, transcribed, recorded or graphic matters, however produced or reproduced. This definition includes, but is not limited to, any and all originals copies or drafts of any and all of the following: records; notes; nonconforming copies that contain deletions, insertions, corrections, handwritten notes or comment summaries; memoranda; schedules; contracts; binders; work papers; logs; diaries; work sheets; files; letters; correspondence; summaries of memoranda; reports or memoranda of telephone conversations or record of personal conversations or interviews; handwritten notes; telephone logs; facsimiles; summaries; invoices; promissory notes; contracts; loan agreements; vouchers; billing statements; tape recordings or transcripts of tape recordings; photographs; videotapes; computerized output or data bases; electronic files; computer disks; computer CDs' electronic mail transmittals; data and all other writings; calculations; and figures or symbols of any kind which, in any manner mentioned, relate to the subjects of the specific requests contained below.

2. Information pertaining to the adoption facility in Litchfield, CA, including:
   a. how many wild horses have been adopted at this facility;
   b. applications for the adoption of wild horses and final decisions on each application at this facility;
   c. the date of adoptions and amount of horses adopted by each adopter at this facility; and
   d. how many wild horses have been returned by adopters from this facility.

3. Information pertaining to the adoption facility in Canon City, CO, including:
   a. how many wild horses have been adopted at this facility;
   b. applications for the adoption of wild horses and final decisions on each application at this facility;
   c. the date of adoptions and amount of horses adopted by each adopter at this facility; and
   d. how many wild horses have been returned by adopters from this facility.

4. Information pertaining to the adoption facility in Hutchinson, KS, including:
   a. how many wild horses have been adopted at this facility;
   b. applications for the adoption of wild horses and final decisions on each application at this facility;
   c. the date of adoptions and amount of horses adopted by each adopter at this facility; and
   d. how many wild horses have been returned by adopters from this facility.

5. Information pertaining to the adoption facility in Elm Creek, NE, including:
   a. how many wild horses have been adopted at this facility;
   b. applications for the adoption of wild horses and final decisions on each application at this facility;
   c. the date of adoptions and amount of horses adopted by each adopter at this facility; and
   d. how many wild horses have been returned by adopters from this facility.

6. Information pertaining to the adoption facility in Carson City, NV, including:
   a. how many wild horses have been adopted at this facility;
   b. applications for the adoption of wild horses and final decisions on each application at this facility;
   c. the date of adoptions and amount of horses adopted by each adopter at this facility; and
   d. how many wild horses have been returned by adopters from this facility.

7.  Information pertaining to the adoption facility in Burns, OR, including:
    a.  how many wild horses have been adopted at this facility;
    b.  applications for the adoption of wild horses and final decisions on each application at this facility;
    c.  the date of adoptions and amount of horses adopted by each adopter at this facility; and
    d.  how many wild horses have been returned by adopters from this facility.

8.  Information pertaining to the adoption facility in Mantles Ranch, WY, including:
    a.  how many wild horses have been adopted at this facility;
    b.  applications for the adoption of wild horses and final decisions on each application at this facility;
    c.  the date of adoptions and amount of horses adopted by each adopter at this facility; and
    d.  how many wild horses have been returned by adopters from this facility.

9.  Information pertaining to the adoption facility in Ridgecrest, CA, including:
    a.  how many wild horses have been adopted at this facility;
    b.  applications for the adoption of wild horses and final decisions on each application at this facility;
    c.  the date of adoptions and amount of horses adopted by each adopter at this facility; and
    d.  how many wild horses have been returned by adopters from this facility.

10. Information pertaining to the adoption facility in Boise, ID, including:
    a.  how many wild horses have been adopted at this facility;
    b.  applications for the adoption of wild horses and final decisions on each application at this facility;
    c.  the date of adoptions and amount of horses adopted by each adopter at this facility; and
    d.  how many wild horses have been returned by adopters from this facility.

11. Information pertaining to the adoption facility in Piney Woods, MS, including:
    a.  how many wild horses have been adopted at this facility;
    b.  applications for the adoption of wild horses and final decisions on each application at this facility;
    c.  the date of adoptions and amount of horses adopted by each adopter at this facility; and
    d.  how many wild horses have been returned by adopters from this facility.

12. Information pertaining to the adoption facility in Palomino Valley, NV, including:
    a.  how many wild horses have been adopted at this facility;
    b.  applications for the adoption of wild horses and final decisions on each application at this facility;
    c.  the date of adoptions and amount of horses adopted by each adopter at this facility; and
    d.  how many wild horses have been returned by adopters from this facility.

13. Information pertaining to the adoption facility in Pauls Valley, OK, including:
    a.  how many wild horses have been adopted at this facility;
    b.  applications for the adoption of wild horses and final decisions on each application at this facility;
    c.  the date of adoptions and amount of horses adopted by each adopter at this facility; and
    d.  how many wild horses have been returned by adopters from this facility.

14. Information pertaining to the adoption facility in Delta, UT, including:
    a.  how many wild horses have been adopted at this facility;
    b.  applications for the adoption of wild horses and final decisions on each application at this facility;
    c.  the date of adoptions and amount of horses adopted by each adopter at this facility; and
    d.  how many wild horses have been returned by adopters from this facility.

15. Information pertaining to the adoption facility in Rock Springs, WY, including:
    a.  how many wild horses have been adopted at this facility;
    b.  applications for the adoption of wild horses and final decisions on each application at this facility;
    c.  the date of adoptions and amount of horses adopted by each adopter at this facility; and
    d.  how many wild horses have been returned by adopters from this facility.

16. Information pertaining to the adoption facility in Riverton, WY, including:
    a.  how many wild horses have been adopted at this facility;
    b.  applications for the adoption of wild horses and final decisions on each application at this facility;
    c.  the date of adoptions and amount of horses adopted by each adopter at this facility; and
    d.  how many wild horses have been returned by adopters from this facility.

17. Information pertaining to all internet adoptions including:
    a. how many wild horses have been adopted via the internet;
    b. what facility the wild horse was at before the internet adoption;
    c. applications for the adoption of wild horses and final decisions on each internet application;
    d. the date of adoptions and amount of horses adopted by each adopter; and
    e. how many wild horses have been returned by adopters.

18. Information pertaining to all adoptions not already covered in this request, including:
    a. how many wild horses have been adopted;
    b. where the wild horse was located prior to adoption;
    c. applications for the adoption of wild horses and final decisions on each application;
    d. the date of adoptions and amount of horses adopted by each adopter; and
    e. how many wild horses have been returned by adopters.

In the event that access to any of the requested records is denied, please note that FOIA provides that if only portions of a requested file are exempted from release, the remainder must still be released. FoA therefore requests that we be provided with all non-exempt portions, which are reasonably segregable. We further request that you describe the deleted material in detail and specify the statutory basis for the denial as well as your reasons for believing that the alleged statutory justification applies in this instance. Please separately state your reasons for not invoking your discretionary powers to release the requested documents in the public interest. Such statements will be helpful in deciding whether to appeal an adverse determination, and in formulating arguments in case an appeal is taken. A written justification might also help to avoid unnecessary litigation. FoA has the right to appeal the withholding or deletion of any information and expects that you will list the office and address where such an appeal can be sent.

The Supreme Court has stated that FOIA establishes a "strong presumption in favor of disclosure" of requested information, and that the burden is on the government to substantiate why information may not be released under the act's various exemptions. *Department of State v. Ray*, 502 U.S.164, 173 (1991). Congress affirmed these tenets of FOIA in legislation, stating that government remains accessible to the American people and is always based not upon the "need to know" but upon the fundamental "right to know." Public Law 110-175, 121Stat2524, 2525 (Dec. 31, 2007). President Obama has also directed that "[t]he presumption of disclosure should be applied to all decisions involving FOIA." 74 Fed. Reg. 4683 (Jan. 26, 2009). Please consider the foregoing before withholding any documents that are responsive to this request.

FoA anticipates that you will make the requested materials available within the statutorily prescribed period. We also request that you waive any applicable fees since

disclosure meets the statutory standard for a fee waiver in that it is clearly "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)( 4)(A) (iii).

### Fee Waiver Request

FOIA provides that, "documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). The legislative history of FOIA, as well as case law interpreting FOIA, indicates that the statute's fee waiver provision is to be liberally construed favoring the public interest. *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987) (quoting 132 Cong. Rec. S14298 (Sept. 30, 1986) (Sen. Leahy)).

FoA's current request for information qualifies for a fee waiver under this standard and, accordingly, we request that all fees be waived.

This request satisfies both statutory and regulatory requirements for granting a fee waiver. Below we first state in italics the requirements for a fee waiver delineated in the FOIA regulations of the Department of Interior (43 C.F.R. § 2.48) and then state our satisfaction of those requirements.

### A. Disclosure of the Information Requested is in the Public Interest

*(1) How the records concern the operations or activities of the Federal government.*

The requested records concern BLM's management of wild horses, and its compliance with the Wild Free-Roaming Horses and Burros Act of 1971. Specifically, it concerns the government's activities, management, and oversight of the wild horse adoption program that that the government implemented.

*(2) How disclosure is likely to contribute to public understanding of those operations or activities, including:*

*(i) How the contents of the records are meaningfully informative;*

These documents will illuminate in a clear and direct way the extent and details of BLM's wild horse adoption program and adoption facilities.  As such, their release will significantly contribute to public understanding and oversight of BLM's operations, specifically its implementation of the wild horse adoption program.

*(ii) The logical connection between the content of the records and the operations or activities;*

There is a logical connection between the content of the records FoA requests and the government's operations and activities because the content of the records will demonstrate where and how BLM conducts wild horse adoptions.  The content of the

records will also reveal how BLM operates the program, and the scope of the program. Finally, FoA anticipates that the contents of the documents will demonstrate whether the government is meeting its duties under the Wild Free-Roaming Horses and Burros Act.

*(iii) How disclosure will contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to your individual understanding;*

FoA is a nonprofit, international animal advocacy organization incorporated in the state of New York since 1957. FoA seeks to free animals from cruelty and exploitation around the world, and to promote a respectful view of non-human, free-living and domestic animals. FoA has a proven track record of contributing to public understanding of issues surrounding wild animals, particularly wild horses.

FoA informs its members about animal advocacy issues as well as the organization's progress in addressing these issues through its magazine called Act'ionLine, its website, and other reports. FoA regularly publicizes the plight of wild horses on public lands, and has published articles and information advocating for the protection of wild horses so that they can live unfettered in their natural habitat.

*(iv) Your identity, vocation, qualifications, and expertise regarding the requested information and information that explains how you plan to disclose the information in a manner that will be informative to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to your individual understanding*

FoA has on staff or available for consultation biologists, environmental lawyers, and policy analysts with long-term experience in animal health, conservation issues, and data analysis. Once the requested information is obtained, FoA staff will analyze the data presented and will review and digest the documents. Then, FoA staff will disseminate the information to FoA's members, members of other conservation organizations, and other interested members of the public. FoA plans to use its website, its magazine, and its connection to other news media in order to significantly contribute to the public understanding of how the government operates the wild horse adoption program.

*(v) Your ability and intent to disseminate the information to a reasonably broad audience of persons interested in the subject (for example, how and to whom do you intend to disseminate the information)*

FoA employs several experts who are able to quickly digest and circulate information obtained from this request, including attorneys and media correspondents. FoA plans to disseminate the information to FoA's members, members of conservation organizations, and other interested members of the public through its website, its quarterly journal ActionLine, and through outreach to other media outlets.

*(3) How disclosure is likely to significantly contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to your individual understanding, including:*

*(i) Whether the information being requested is new;*

FoA's request is for new information regarding the operations and activities of the wild horse adoption program. FoA believes the information requested has not been released to the public yet, and is not aware of how it could access this information other than through a FOIA request. Thus, the requested documents would reveal new information about the wild horse adoption program.

*(ii) Whether the information would confirm or clarify data that has been released previously;*

BLM has provided information about how to adopt wild horse, but has not released documents containing detailed information about all the adoption facilities and adoptions that have occurred over the last 10 years. FoA anticipates that the requested information will clarify the activities and extent of the wild horse adoption program, and help confirm whether or not the program is being abused.

*(iii) How disclosure will increase the level of public understanding of the operations or activities of the Department or a bureau that existed prior to disclosure; and*

FoA requests the records to increase its understanding, and subsequently contribute to public understanding, of how BLM operates the wild horse adoption program. Disclosure of these documents would provide FoA and the public, with information about the facilities and operations of the wild horse adoption program. Without this information, FoA and the public cannot determine how BLM's actions are affecting the wild horses. Disclosure will permit FoA to disseminate information to the public and it will also allow FoA members and the public are more informed about the wild horse adoption program.

*(iv) Whether the information is already publicly available. If the Government previously has published the information you are seeking or it is routinely available to the public in a library, reading room, through the Internet, or as part of the administrative record for a particular issue, it is less likely that there will be a significant contribution from release.*

The information FoA is requesting is not, to our knowledge, publicly available. The Government may omit sending us requested records that are available in publicly accessible forums such as on the internet or in published materials that are routinely available at public or university libraries so long as the Government provides us with adequate references and/or website links so that we may obtain these materials on our own. We would request the Government provide us with an index of such omitted documents. However, we suspect that the majority of requested materials will not be available unless we receive them from the Government in satisfaction of this FOIA request.

*(4) How the public's understanding of the subject in question will be enhanced to a significant extent by the disclosure.*

According to the government, the BLM has placed more than 230,000 wild horses and burros into private care since 1971.[2] However, the public does not how many horses have been adopted in the last 10 years, or any details about the adoptions and adoption facilities. FoA members, and the public, are very interested in the fate of these iconic animals, but has little information about their adoptions. FoA's staff has the ability to review, consolidate, and disseminate all this information to the public. This process will make the information available to the public. By consolidating and releasing the information, FoA will enhance the public's understanding of how the government is currently operating and implementing the wild horse adoption program. If the information is not disclosed to FoA, the public will remain in the dark about BLM's wild horse adoption program.

### B. Disclosure of the information is not primarily in the commercial interest of the requester

*(b) In deciding whether the fee waiver meets the requirements in § 2.45(a)(2) of this subpart, the bureau will consider any commercial interest of yours that would be furthered by the requested disclosure.*

*(1) You are encouraged to provide explanatory information regarding this consideration.*

*(2) The bureau will not find that disclosing the requested information will be primarily in your commercial interest where the public interest is greater than any identified commercial interest in disclosure.*

FoA does not have a commercial, trade, or profit interest in the requested records. In fact, FoA does not have any commercial, trade, or profit interests. FoA is a not-for-profit, international animal advocacy organization, incorporated in the state of New York since 1957. It serves the public interest by increasing the general public awareness of animal advocacy issues and how to end animal cruelty and exploitation around the world. FoA seeks to promote a respectful view of non-human, free-living and domestic animals. The Internal Revenue Service recognizes FoA as a 501(c)(3) tax-exempt organization (IRS Employer Identification #: 13-6018549).

Given FoA's well-orchestrated and demonstrably successful efforts at educating the public on animal advocacy issues, and the fact that FoA's education program has significantly contributed to an understanding of government operations and activities, FoA is entitled to a fee waiver.

Please produce the records regarding this FOIA request by electronic mail to **jenniferbarnes@friendsofanimals.org** or the physical address listed below:

Friends of Animals
7500 E. Arapahoe Rd., Suite 385
Centennial, CO 80112

---

[2] Available from http://www.blm.gov/wo/st/en/prog/whbprogram/adoption_program.html

☐  NATIONAL HEADQUARTERS ● 777 POST ROAD SUITE 205 ●  DARIEN, CT 06820 ● T 203 656 1522 ● F 203 656 0267

☐  NEW YORK OFFICE ● 1841 BROADWAY SUITE 350 ● NEW YORK, NY 10023 ● T 212 247 8120 ● F 212 582 4482

☐  WILDLIFE LAW PROGRAM ● 7500 E. ARAPAHOE ROAD SUITE 385 ● CENTENNIAL, CO 80112 ● T 720 949 7791        FRIENDSOFANIMALS.ORG

Please produce the records on a rolling basis; at no point should the search for –
or the deliberation concerning – certain records delay the production of others that BLM
has already retrieved and elected to produce.

Thank you for your attention to this request. If you have any questions about the
requested documents or the requested fee waiver, please do not hesitate to contact me
at 720-949-7791 or jenniferbarnes@friendsofanimals.org. I look forward to hearing
from you within twenty days (excepting Saturdays, Sundays, and public holidays), as
required by FOIA.

Sincerely,

*Jennifer Barnes*

Jennifer Barnes
Staff Attorney
Wildlife Law Program
Friends of Animals

Western Region Office
7500 E. Arapahoe Rd., Suite 385
Centennial, CO 80112
jenniferbarnes@friendsofanimals.org
720-949-7791

☐  NATIONAL HEADQUARTERS ● 777 POST ROAD SUITE 205 ● DARIEN, CT 06820 ● T 203 656 1522 ● F 203 656 0267
☐  NEW YORK OFFICE ● 1841 BROADWAY SUITE 350 ● NEW YORK, NY 10023 ● T 212 247 8120 ● F 212 582 4482
☐  WILDLIFE LAW PROGRAM ● 7500 E. ARAPAHOE ROAD SUITE 385 ● CENTENNIAL, CO 80112 ● T 720 949 7791          FRIENDSOFANIMALS.ORG

**Exhibit B**



~~EXPLOITERS~~
FRIENDS
of ANIMALS

November 25, 2014

**Submitted via FOIA portal**

Ryan Witt
BLM FOIA Officer
1849 C. Street NW, Rm 2134LM
Washington, DC 20240

Re: Freedom of Information Act Request

Dear Mr. Witt,

This is a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for the release and production of records. Friends of Animals ("FoA") request copies of all records[1] held by the U.S. Department of Interior, including the Bureau of Land Management ("BLM") relating to the effects of ZonaStat-H, or any other contraceptive containing on porcine zona pellucida ("PZP") administered to wild horses and burros.

Please provide all records in your possession, whether received, created, and/or distributed by BLM, that relate to the effects of ZonaStat-H, or any other contraceptive containing PZP, administered to wild horses and burros. This should include any record relating illness or death that is either directly or indirectly related to PZP, and the PZP-22 studies being done in Sand Wash Basin and Cedar Mountains.

In the event that access to any of the requested records is denied, please note that FOIA provides that if only portions of a requested file are exempted from release, the

---

[1] "Record(s)" is used in the broadest sense contemplated by Federal Rule of Civil Procedure 34. It means all written, transcribed, recorded or graphic matters, however produced or reproduced. This definition includes, but is not limited to, any and all originals copies or drafts of any and all of the following: records; notes; nonconforming copies that contain deletions, insertions, corrections, handwritten notes or comment summaries; memoranda; schedules; contracts; binders; work papers; logs; diaries; work sheets; files; letters; correspondence; summaries of memoranda; reports or memoranda of telephone conversations or record of personal conversations or interviews; handwritten notes; telephone logs; facsimiles; summaries; invoices; promissory notes; contracts; loan agreements; vouchers; billing statements; tape recordings or transcripts of tape recordings; photographs; videotapes; computerized output or data bases; electronic files; computer disks; computer CDs' electronic mail transmittals; data and all other writings; calculations; and figures or symbols of any kind which, in any manner mentioned, relate to the subjects of the specific requests contained below.

remainder must still be released. FoA therefore requests that we be provided with all non-exempt portions, which are reasonably segregable. We further request that you describe the deleted material in detail and specify the statutory basis for the denial as well as your reasons for believing that the alleged statutory justification applies in this instance. Please separately state your reasons for not invoking your discretionary powers to release the requested documents in the public interest. Such statements will be helpful in deciding whether to appeal an adverse determination, and in formulating arguments in case an appeal is taken. A written justification might also help to avoid unnecessary litigation. FoA has the right to appeal the withholding or deletion of any information and expects that you will list the office and address where such an appeal can be sent.

The Supreme Court has stated that FOIA establishes a "strong presumption in favor of disclosure" of requested information, and that the burden is on the government to substantiate why information may not be released under the act's various exemptions. *Department of State v. Ray*, 502 U.S.164, 173 (1991). Congress affirmed these tenets of FOIA in legislation, stating that government remains accessible to the American people and is always based not upon the "need to know" but upon the fundamental "right to know." Public Law 110-175, 121Stat2524, 2525 (Dec. 31, 2007). President Obama has also directed that "[t]he presumption of disclosure should be applied to all decisions involving FOIA." 74 Fed. Reg. 4683 (Jan. 26, 2009). Please consider the foregoing before withholding any documents that are responsive to this request.

FoA anticipates that you will make the requested materials available within the statutorily prescribed period. We also request that you waive any applicable fees since disclosure meets the statutory standard for a fee waiver in that it is clearly "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)( 4)(A) (iii).

### Fee Waiver Request

FOIA provides that, "documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). The legislative history of FOIA, as well as case law interpreting FOIA, indicates that the statute's fee waiver provision is to be liberally construed favoring the public interest. *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987) (quoting 132 Cong. Rec. S14298 (Sept. 30, 1986) (Sen. Leahy)).

FoA's current request for information qualifies for a fee waiver under this standard and, accordingly, we request that all fees be waived.

This request satisfies both statutory and regulatory requirements for granting a fee waiver. Below we first state in italics the requirements for a fee waiver delineated in the FOIA regulations of the Department of Interior (43 C.F.R. § 2.48) and then state our satisfaction of those requirements.

**A. Disclosure of the Information Requested is in the Public Interest**

*(1) How the records concern the operations or activities of the Federal government.*

The requested records concern BLM's management of wild horses, and its administration of contraceptive to wild horses. Specifically, it concerns the government's activities, management, and oversight of the wild horse program that the government implemented.

*(2) How disclosure is likely to contribute to public understanding of those operations or activities, including:*

*(i) How the contents of the records are meaningfully informative;*

These documents will illuminate in a clear and direct way the extent and details of BLM's wild horse program and administration of PZP to wild horses.  As such, their release will significantly contribute to public understanding and oversight of BLM's operations, specifically its administration of contraceptives to wildhorses.

*(ii) The logical connection between the content of the records and the operations or activities;*

There is a logical connection between the content of the records FoA requests and the government's operations and activities because the content of the records will demonstrate the effect of BLM's administration of contraceptive to wildlife on public land. The content of the records will reveal the effects of PZP on wild horses, other wildlife, and the environment.

*(iii) How disclosure will contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to your individual understanding;*

FoA is a nonprofit, international animal advocacy organization incorporated in the state of New York since 1957. FoA seeks to free animals from cruelty and exploitation around the world, and to promote a respectful view of non-human, free-living and domestic animals. FoA has a proven track record of contributing to public understanding of issues surrounding wild animals, particularly wild horses.

FoA informs its members about animal advocacy issues as well as the organization's progress in addressing these issues through its magazine called Act'ionLine, its website, and other reports. FoA regularly publicizes the plight of wild horses on public lands, and has published articles and information advocating for the protection of wild horses so that they can live unfettered in their natural habitat.

*(iv) Your identity, vocation, qualifications, and expertise regarding the requested information and information that explains how you plan to disclose the information in a manner that will be informative to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to*

*your individual understanding*

FoA has on staff or available for consultation biologists, environmental lawyers, and policy analysts with long-term experience in animal health, conservation issues, and data analysis. Once the requested information is obtained, FoA staff will analyze the data presented and will review and digest the documents. Then, FoA staff will disseminate the information to FoA's members, members of other conservation organizations, and other interested members of the public. FoA plans to use its website, its magazine, and its connection to other news media in order to significantly contribute to the public understanding of how the government operates the wild horse program.

*(v) Your ability and intent to disseminate the information to a reasonably broad audience of persons interested in the subject (for example, how and to whom do you intend to disseminate the information)*

FoA employs several experts who are able to quickly digest and circulate information obtained from this request, including attorneys and media correspondents. FoA plans to disseminate the information to FoA's members, members of other conservation organizations, and other interested members of the public through its website, its quarterly journal ActionLine, and through outreach to other media outlets.

*(3) How disclosure is likely to significantly contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to your individual understanding, including:*

*(i) Whether the information being requested is new;*

FoA's request is for new information regarding the operations and activities of the wild horse program. FoA believes the information requested has not been released to the public yet, and is not aware of how it could access this information other than through a FOIA request. Thus, the requested documents would reveal new information about the wild horse program, and effects of PZP.

*(ii) Whether the information would confirm or clarify data that has been released previously;*

BLM has provided information that it administers PZP as a contraceptive to wild horses, but has not released documents containing detailed information about the effects of PZP. FoA anticipates that the requested information will clarify the effect of the government's approval of PZP use.

*(iii) How disclosure will increase the level of public understanding of the operations or activities of the Department or a bureau that existed prior to disclosure; and*

FoA requests the records to increase its understanding, and subsequently contribute to public understanding, of how BLM operates the wild horse program.  Disclosure of these documents would provide FoA and the public, with information about the operations of the wild horse program and effects of PZP. Without this information, FoA and the public cannot

determine how BLM's actions are affecting the wild horses. Disclosure will permit FoA to disseminate information to the public and it will also increase the public understanding of BLM's management of wild horses and use of PZP.

> *(iv) Whether the information is already publicly available. If the Government previously has published the information you are seeking or it is routinely available to the public in a library, reading room, through the Internet, or as part of the administrative record for a particular issue, it is less likely that there will be a significant contribution from release.*

The information FoA is requesting is not, to our knowledge, publicly available. The Government may omit sending us requested records that are available in publicly accessible forums such as on the internet or in published materials that are routinely available at public or university libraries so long as the Government provides us with adequate references and/or website links so that we may obtain these materials on our own. We would request the Government provide us with an index of such omitted documents. However, we suspect that the majority of requested materials will not be available unless we receive them from the Government in satisfaction of this FOIA request.

> *(4) How the public's understanding of the subject in question will be enhanced to a significant extent by the disclosure.*

The government has applied PZP to many wild horses on public lands. However, the public does know all the effects of PZP. FoA's staff has the ability to review, consolidate, and disseminate all this information to the public. This process will make the information available to the public. By consolidating and releasing the information, FoA will enhance the public's understanding of how the government is currently operating and implementing the wild horse program. If the information is not disclosed to FoA, the public will remain in the dark about BLM's wild horse program, and the effects of PZP.

## B. Disclosure of the information is not primarily in the commercial interest of the requester

*(b) In deciding whether the fee waiver meets the requirements in § 2.45(a)(2) of this subpart, the bureau will consider any commercial interest of yours that would be furthered by the requested disclosure.*

> *(1) You are encouraged to provide explanatory information regarding this consideration.*

> *(2) The bureau will not find that disclosing the requested information will be primarily in your commercial interest where the public interest is greater than any identified commercial interest in disclosure.*

FoA does not have a commercial, trade, or profit interest in the requested records. In fact, FoA does not have any commercial, trade, or profit interests. FoA is a not-for-profit, international animal advocacy organization, incorporated in the state of New York since 1957. It serves the public interest by increasing the general public awareness of animal advocacy issues and how to end animal cruelty and exploitation around the world. FoA seeks to promote a respectful view of non-human, free-living and domestic animals. The

Internal Revenue Service recognizes FoA as a 501(c)(3) tax-exempt organization (IRS Employer Identification #: 13-6018549).

Given FoA's well-orchestrated and demonstrably successful efforts at educating the public on animal advocacy issues, and the fact that FoA's education program has significantly contributed to an understanding of government operations and activities, FoA is entitled to a fee waiver.

Please produce the records regarding this FOIA request by electronic mail to **jenniferbarnes@friendsofanimals.org** or the physical address listed below:

Friends of Animals
7500 E. Arapahoe Rd., Suite 385
Centennial, CO 80112

Please produce the records on a rolling basis; at no point should the search for – or the deliberation concerning – certain records delay the production of others that BLM has already retrieved and elected to produce.

Thank you for your attention to this request. If you have any questions about the requested documents or the requested fee waiver, please do not hesitate to contact me at 720-949-7791 or jenniferbarnes@friendsofanimals.org. I look forward to hearing from you within twenty days (excepting Saturdays, Sundays, and public holidays), as required by FOIA.[2]

Sincerely,

Jenni Barnes

Jennifer Barnes
Staff Attorney
Friends of Animals

7500 E. Arapahoe Rd., Suite 385
Centennial, CO 80112
jenniferbarnes@friendsofanimals.org
720-949-7791

---

[2] By law, BLM may not assess any search fees if it fails to meet FOIA's mandatory time limits for responses. In 2007, Congress amended FOIA to provide that "[a]n agency shall not assess search fees . . . if the agency fails to comply with any time limit" of FOIA. 5 U.S.C. § 552(a)(4)(A)(viii). An agency is required to make a determination on a FOIA request, including a fee waiver request, within 20 working days of receiving the request. 5 U.S.C. § 552(a)(6)(A)(i). It is likewise required to rule on an appeal of any denial within 20 working days of receiving such an appeal. 5 U.S.C. § 552(a)(6)(A)(ii). *See Bensman v. Nat'l Park Serv.*, 806 F. Supp. 2d 31 (D.D.C. 2011).

☐  NATIONAL HEADQUARTERS ● 777 POST ROAD SUITE 205 ● DARIEN, CT 06820 ● T 203 656 1522 ● F 203 656 0267

☐  NEW YORK OFFICE ● 1841 BROADWAY SUITE 350 ● NEW YORK, NY 10023 ● T 212 247 8120 ● F 212 582 4482

☐  WILDLIFE LAW PROGRAM ● 7500 E. ARAPAHOE ROAD SUITE 385 ● CENTENNIAL, CO 80112 ● T 720 949 7791          FRIENDSOFANIMALS.ORG

☐  NATIONAL HEADQUARTERS ● 777 POST ROAD SUITE 205 ●  DARIEN, CT 06820 ● T 203 656 1522 ● F 203 656 0267
☐  NEW YORK OFFICE ● 1841 BROADWAY SUITE 350 ● NEW YORK, NY 10023 ● T 212 247 8120 ● F 212 582 4482
☐  WILDLIFE LAW PROGRAM ● 7500 E. ARAPAHOE ROAD SUITE 385 ● CENTENNIAL, CO 80112 ● T 720 949 7791          FRIENDSOFANIMALS.ORG

**Exhibit C**



United States Department of the Interior

BUREAU OF LAND MANAGEMENT
Washington, D.C.  20240
http://www.blm.gov



January 30, 2015

In Reply Refer To:
1278-860
FOIA # 2015-00148

Jennifer Barnes
Staff Attorney
Friends of Animals
7500 E. Arapahoe Rd., Suite 385
Centennial, CO 80112

Dear Ms. Barnes:

This letter acknowledges your Freedom of Information Act (FOIA) request dated November 25, 2014, which was received by the Bureau of Land Management's (BLM) Washington Office (WO) on the same day.  Your request was assigned control number 2015-00148 and should be used in any subsequent correspondence concerning this FOIA.

In your letter you requested the following:

> Friends of Animals ("FoA") request copies of all records held by the U.S. Department of Interior, including the Bureau of Land Management ("BLM") relating to the effects of ZonaStat-H, or any other contraceptive containing on porcine zona pellucida ("PZP") administered to wild horses and burros.
>
> Please provide all records in your possession, whether received, created, and/or distributed by BLM, that relate to the effects of ZonaStat-H, or any other contraceptive containing PZP, administered to wild horses and burros. This should include any record relating illness or death that is either directly or indirectly related to PZP, and the PZP-22 studies being done in Sand Wash Basin and Cedar Mountains.

We have designated your request in the "all others" category.  As an "all others" requester, you are entitled to two free hours of search, and one hundred pages of records without incurring duplication charges, **See** 43 CFR 2.39(a).  Because our response to this request has taken longer than the 20 working days that are statutorily required to assess fees, please consider the fee issue moot.  Also, please be advised that we will not make a determination on your fee waiver request because of the aforementioned mootness of your fees.

We use Multitrack Processing to process FOIA requests.  The simple track is for requests that can be processed in one to five workdays.  The Normal track is for requests that can be processed in six to twenty workdays.  The complex track is for requests that can be processed in twenty-one to sixty workdays.  The Exceptional/Voluminous track is for requests requiring more than sixty workdays for processing.  The expedited track is for requests that have been granted expedited processing.  Within each track, requests are usually processed on a first-in, first-out basis.

Your request falls into the "Normal" processing track.  We therefore expect that we will dispatch a determination to you within 20 workdays.

If you have any questions concerning this matter, please contact the BLM FOIA Office at 202-912-7650, or via email at BLM_WO_FOIA@BLM.GOV.

Sincerely,

Keiosha Alexander
WO FOIA Specialist
Bureau of Land Management